UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                        :
TARIK SANSAL,                                           :
                                    Plaintiff,          :
                                                        :                10 Civ. 8417 (JPO)
                    -against-                           :
                                                        :                MEMORANDUM AND
ALLEN PASCHAL,                                          :                ORDER
                                    Defendant.          :
                                                        :
-------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

       Plaintiff Tarik Sansal filed his original complaint in this case on November 8, 2010 (Dkt.

No. 1) and filed an amended complaint on March 18, 2011 (Dkt. No. 12 ("Am. Compl.").

Defendant Allen Paschal filed a motion for summary judgment on February 17, 2012. (Dkt. No.

26.) For the reasons discussed below, Defendant Paschal's motion is granted.

I.     **Background**

       Unless otherwise noted, the facts in this background section are drawn from the parties'

statements of undisputed fact submitted pursuant to Local Rule 56.1.

       In May 2004, Sansal approached Paschal with a concept for a new business. Sansal's

idea was to acquire a number of already existing web-based recruitment businesses and combine

then into a single, integrated online interface. The business Sansal proposed was ultimately

given the name OnTargetJobs ("OTJ"); for simplicity, this opinion refers to the business as OTJ

even at times before the business was formed or so named. On June 25, 2004, Sansal and

Paschal signed a Letter Agreement, which provided in part:

> The parties hereto shall form a legal entity . . . for the purpose of doing business
> in the Industry [of online recruitment] (the "Company") . . . . Each of the parties
> hereto shall beneficially own one-half of the Company at the time it is formed,
> and any subsequent issuance of equity by the Company shall dilute or otherwise

affect the parties hereto equally unless otherwise approved in writing in advance by both of the parties hereto.

(Letter Agreement, appended as Ex. 2 to Declaration of Tarik Sansal, Dkt. No. 31 ("Sansal Decl.").)

Sansal also asserts that when the Letter Agreement was signed,

> Paschal and [Sansal] also agreed that Paschal, acting alone and on behalf of the partnership, would handle any and all negotiations for capital investment in the Business and the retention of our respective ownership interests in the Business. In simple terms, Paschal agreed to be the exclusive conduit for the negotiations between our partnership and any investors. . . .
> Upon Paschal's request, and in consideration of [the] Partnership Agreement [the Letter Agreement] and [the] agreement that Paschal would raise capital for the Business, [Sansal] terminated [his] efforts with other business contacts to assist [him] in raising capital for the Business.

(Sansal Decl. ¶¶ 11-12.) There is no other evidence adduced to show that the parties indeed made such an agreement regarding investor negotiations.

Paschal did take a leading role in negotiating with a number of potential investors, including the private equity firm Warburg Pincus, LLC ("Warburg"). While these negotiations were ongoing, Paschal reported to Sansal that Warburg (like other investors before it) was proposing a greater share of OTJ equity for Paschal (who would be OTJ's chief executive) than for Sansal. Sansal avers that Paschal told Sansal that Paschal had informed Warburg of the Letter Agreement providing for equal ownership of OTJ by Sansal and Paschal. (Sansal Decl. ¶ 40.) Sansal appealed to Paschal to negotiate a larger share of OTJ equity for Sansal. Paschal reported back to Sansal that, after further negotiation, Warburg had raised the amount of OTJ equity for Sansal that they would offer in their financing proposal.

Paschal and Sansal ultimately agreed with Warburg on a financing arrangement through which Warburg would invest $40 million in OTJ. The financing arrangement agreed upon with Warburg provided that (1) Sansal would receive 1.89% equity in OTJ and an additional 1.5%

2

share if Warburg earned five times its investment in OTJ and (2) Paschal's OTJ equity share, if

fully vested, would be 7.56%. Sansal and OTJ concluded a Consulting Agreement, effective

February 1, 2005, under which Sansal agreed to the above percentages of equity that he would

receive and also agreed to take on a consulting position with OTJ. (Consulting Agreement,

appended as Ex. D(12) to Declaration of Defendant Allen Paschal, Dkt. No. 27 ("Paschal

Decl.").) Paschal was awarded his OTJ equity share under a separate Restricted Stock Grant

Notice of March 30, 2005.

A Rescission of Letter Agreement was signed by Paschal on February 3, 2005, and by

Sansal on February 5, 2005; it provided in part:

> Whereas, after careful and diligent efforts, the Parties have been able to secure
> financing on the terms dictated by Warburg Pincus, LLC, and such terms do not
> allow equal ownership by Paschal and Sansal;
>     Now therefore, in recognition of the diligent, but unsuccessful, efforts of
> Paschal to secure equity financing under the terms of the Letter Agreement,
> Paschal and Sansal hereby agree to revoke, rescind and render null and void the
> Letter Agreement.

(Rescission of Letter Agreement, appended as Ex. D(13) to Paschal Decl.)

Sansal avers that, in 2008, during a conversation with a Warburg employee, Sansal

learned for the first time that Paschal had never informed Warburg of the "Partnership" between

Sansal and Paschal or their Letter Agreement providing that OTJ would be equally owned by the

two men. (Sansal Decl. ¶ 57.)

Sansal alleges that Paschal misrepresented the truth when he told Sansal that he (Paschal)

had informed Warburg of the Letter Agreement and its substance. Sansal now sues Paschal,

arguing that Paschal's misrepresentation and/or his failure to inform Warburg of the Letter

Agreement constituted fraud, a breach of fiduciary duty, and a breach of contract. (Am. Compl.)

## II.   Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted). "A fact is 'material' when it might affect the outcome of the suit under governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted).

When determining whether a genuine dispute of material fact exists, a court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).

## III.   Discussion

This discussion addresses in turn Sansal's claims for (1) fraud, (2) breach of fiduciary duty, and (3) breach of contract.

### A.   Fraud

"The elements of fraud under New York law are: '[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury.'" *Premium Mortg. Corp. v. Equifax Info.*

*Servs., LLC*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)). "An essential element of any fraud or negligent misrepresentation claim is that there must be reasonable reliance, to a party's detriment, upon the representations made." *Water St. Leasehold LLC v. Deloitte & Touche LLP*, 19 A.D.3d 183, 185, 796 N.Y.S.2d 598 (1st Dept. 2005) (citation omitted). "[P]laintiff must show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation)." *Laub v. Faessel*, 297 A.D.2d 28, 31, 745 N.Y.S.2d 534 (1st Dept. 2002) (citation omitted).

There is no evidence that Paschal's alleged misrepresentation (that he had informed Warburg of the Letter Agreement) caused Sansal to receive a lesser share of OTJ equity. Mark Colodny, Warburg's negotiator on the OTJ financing arrangement, testified that "had I known about any agreement that Allen [Paschal] would have had with Tarik [Sansal], it would not have altered Warburg Pincus's distribution of the equity and it would not have altered our proposal to Allen and Tarik." (Transcript of September 13, 2011 Deposition of Mark Colodny at 19:7-11, appended as Ex. K to Paschal Decl.)

To counter Colodny's testimony, Sansal offers only the feeble arguments that disclosure of the Letter Agreement's equal ownership provision might have changed Warburg's proposed equity allocation because (1) a previous investor had increased its proposed equity allocation to Sansal from 2% to 5% at a time when it had knowledge of the Letter Agreement; and (2) Colodny testified that, if he had had knowledge of the Letter Agreement, he would have sought legal advice before making a proposal on financing for OTJ. These arguments are insufficient to overcome the evidence that, had Warburg known of the Letter Agreement, Warburg's equity

5

allocation proposal would have been the same.  Ultimately, there is no evidence to suggest that

Paschal's alleged misrepresentation to Sansal caused Sansal to receive any less equity in OTJ

than he otherwise would have.  There being no genuine dispute of material fact on the issue of

loss causation, Paschal is entitled to summary judgment as to Sansal's fraud claim.

### B.      Breach of Fiduciary Duty

There is some question whether Sansal's claim for breach of fiduciary duty depends on

his first succeeding on his claim of fraud.  If the breach-of-fiduciary-duty claim does depend on

the fraud claim, then both claims must be dismissed for the reasons explained above.  But if

Sansal's claim for breach of fiduciary duty is independent of his fraud claim, the parties dispute

whether the claim for breach of fiduciary duty is time-barred or not.  It is.

The New York Court of Appeals has held that

> New York law does not provide a single statute of limitations for breach of
> fiduciary duty claims.  Rather, the choice of the applicable limitations period
> depends on the substantive remedy that the plaintiff seeks.  Where the remedy
> sought is purely monetary in nature, courts construe the suit as alleging "injury to
> property" within the meaning of CPLR 214(4), which has a three-year limitations
> period.  Where, however, the relief sought is equitable in nature, the six-year
> limitations period of CPLR 213(1) applies.  Moreover, where an allegation of
> fraud is essential to a breach of fiduciary duty claim, courts have applied a six-
> year statute of limitations under CPLR 213(8).

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139, 907 N.E.2d 268 (2009)

(citation omitted); *see also Pursnani v. Stylish Move Sportswear, Inc.*, 92 A.D.3d 663, 664, 938

N.Y.S.2d 333 (2d Dep't 2012) (holding that since the plaintiff's claim for breach of fiduciary

duty "[sought] money damages and [was] not founded on allegations of fraud," that "cause[] of

action [was] governed by the three-year limitations period applicable to injury to property"

(citation omitted)).

6

On the assumption that Sansal's claim for breach of fiduciary duty is independent of his allegations of fraud, that claim is governed by the three-year statute of limitations of CPLR 214(4) because Sansal seeks only money damages.

For a tort claim such as breach of fiduciary duty, the "Statute of Limitations does not run until there is a legal right to relief. Stated another way, accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993) (citation omitted); *accord IDT Corp.*, 12 N.Y.3d at 140.

Since all of the facts that Sansal alleges to support his fiduciary breach claim could have been "truthfully alleged" by February 2005 at the latest, the claim was time-barred by February 2008 at the latest. Since there is no genuine dispute of material fact on this point, Paschal is entitled to summary judgment as to Sansal's claim for breach of fiduciary duty.

## C.   Breach of Contract

In responding to the instant motion, Sansal has made clear that his claim for

> breach of contract does not arise from that certain provision in the [Letter] Agreement [providing for equal ownership], and the fact that the two parties did not end up with equal ownership interests in OTJ. Rather, the claim is based upon the agreement for Paschal to negotiate on behalf of Sansal for their respective ownership interest in good faith and with fair dealing, and the allegation that Paschal engaged in self-dealing, resulting in disparate equity ownership between Paschal and Sansal.

(Pl.'s Br., Dkt. No. 33, at 15.)

"Under New York law, the elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citing *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)). "It is an elementary principle of

contract law that, in order to form a contract, there must be an offer, an acceptance, and consideration." *Davidowitz v. Patridge*, 2010 U.S. Dist. LEXIS 132762, at *15-16 (S.D.N.Y. Dec. 6, 2010) (citing *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43, 46 (1st Dep't 2009); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009)).

Here, Sansal asserts in his declaration that he and Paschal agreed that Paschal would lead investor negotiations (Sansal Decl. ¶¶ 11-12), but there is no evidence adduced to show that this alleged agreement (which is separate from the parties' Letter Agreement) satisfied the requirements of an enforceable contract. In particular, there is no evidence of offer, acceptance, or consideration. The adduced evidence provides no basis on which a reasonable juror could find that Sansal and Paschal had formed a contract obligating Paschal to negotiate on behalf of the two men or on behalf of a partnership between them. As there is no evidence to support the first element of Sansal's breach-of-contract claim, Paschal is entitled to summary judgment as to that claim.

## IV.   Conclusion

For the foregoing reasons, Defendant Paschal's motion for summary judgment is GRANTED as to all of Plaintiff Sansal's claims.

The Clerk of Court is directed to close the motion at docket entry number 26 and to terminate this case.

SO ORDERED.

Dated: New York, New York
       August 2⁴, 2012

                                           J. PAUL OETKEN
                                           United States District Judge

8